IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| NANCY ANN WILLIAMS ) | Case No. 07-40956 |
| ) | |
| Debtor. ) | |

ORDER GRANTING MOTION FOR RELIEF FROM CO-DEBTOR STAY

Movants, Gregg Smith, Lisa Smith, and the Mark B.Vogt Revocable Trust dated 12/12/96, seek relief from a stay of action against co-debtors pursuant to 11 U.S.C. § 1301(c). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). Because the Debtor's plan proposes not to pay the Movants' claim, their motion for relief from the co-debtor stay will be granted under 11 U.S.C. § 1301(c)(2).

On or about May 9, 2005, Nancy Ann Williams ("Debtor") and non-debtors T.J. Williams and Katherine L. Williams (the "Williams"), executed a promissory note in the original sum of $184,000 payable to Citizens Union State Bank & Trust. The note was secured by a deed of trust on real property. Citizens Union State Bank subsequently assigned the note and deed of trust to the Movants, who foreclosed on the property, and filed an action in the state court seeking a deficiency in excess of $44,000.

Debtor filed this Chapter 13 proceeding on March 29, 2007, which stayed the state court deficiency action. On the same day, Debtor filed a Chapter 13 plan which provides that non-priority unsecured creditors will receive a zero percent dividend. Hence, Movants seek relief from § 1301's co-debtor stay to pursue the Williams for the deficiency. The Debtor

opposes the motion. The Court held a hearing on May 7, 2007.

Section 1301, known as the "co-debtor stay," provides, in pertinent part, that "after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor."[1] "The co-debtor stay operates to delay collection efforts against individuals close to the debtor who have obligated themselves on debts incurred by and for the benefit of the Chapter 13 debtor."[2]

Section 1301(c) provides for relief from the co-debtor stay where any one of three conditions is met. The court shall grant relief from the stay where "(1) as between the debtor and the individual protected under subsection (a) of this section, such individual received the consideration for the claim held by such creditor; (2) the plan filed by the debtor proposes not to pay such claim; or (3) such creditor's interest would be irreparably harmed by continuation of such stay."[3] The statute is written in the disjunctive. Therefore, although the Movants assert that all three conditions are present here, they need to prove that only one of the three conditions exists.

Section 1301(c)(1) provides that the co-debtor stay shall be lifted where, as between the debtor and the co-debtor, the co-debtor received the consideration for the claim held by

---

[1] 11 U.S.C. § 1301(a). The co-debtor stay is designed to "protect a chapter 13 debtor from indirect pressure from a creditor exerted through his friends or relatives, to favor or prefer that creditor." H.R. REP. NO. 595, 95th Cong., 1st Sess. 121 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6082.

[2] *Collier on Bankruptcy*, ¶ 1301.01, p. 1301-3 (15th rev. ed. 2002).

[3] 11 U.S.C. § 1301(c).

the creditor.[4]  Counsel indicated at the hearing that the Debtor and the Williams were all on the title to the property, and all three of them lived there until the foreclosure occurred.  If that is true, then the Debtor received some of the consideration for the loan.  Courts have disagreed as to the extent to which the nondebtor must receive the consideration in order for § 1301(c)(1) to provide a basis for relief from the co-debtor stay.  According to one court, however, the "prevailing view" is that, if the debtor received any of the consideration, then § 1301(c)(1) does not provide a basis for relief from the co-debtor stay.[5]  Under that theory, the Movants have failed to meet their burden because it appears the Debtors received some of the consideration.  However, there was no evidence presented on that issue and, because I conclude that the Movants have met their burden under subsection (c)(2), discussed below, I need not decide the (c)(1) issue here.

Subsection (c)(3) provides relief from the stay of actions against co-debtors where the moving creditor's interest would be irreparably harmed by continuation of the co-debtor stay.[6]  However, mere delay in the receipt of payments does not constitute irreparable harm so as to warrant relief from the co-debtor stay.[7]  Rather, the creditor must demonstrate that some event occurred or is likely to occur that will impair its ability to recover from the co-

---

[4] 11 U.S.C. § 1301(c)(1).

[5] *In re Motes*, 166 B.R. 147, 149 (Bankr. E.D. Mo. 1994) (listing cases and agreeing with the prevailing view, specifically deciding to lift the co-debtor stay only in those situations where the debtor did not receive any consideration for the loan).

[6] 11 U.S.C. § 1301(c)(3).

[7] *In re Humphrey*, 310 B.R. 735, 739 (Bankr. W.D. Mo. 2004) (*citing Harris v. Fort Oglethorpe State Bank*, 721 F.2d 1052, 1054 (6th Cir. 1983)).

debtor and that immediate action is necessary to prevent this harm.[8] For example, irreparable harm may be shown in cases where the co-debtor is likely to leave the jurisdiction, or is transferring assets to shield them from creditors, or the like.[9] Here, Movants have provided no evidence of harm, other than delay in payment. They have, therefore, failed to prove that § 1301(c)(3) is applicable.

I find, however, that Movants have established that relief from the co-debtor stay is warranted under subsection (c)(2). That section provides for relief from the co-debtor stay where the plan filed by the debtor "proposes not to pay" the claim held by the creditor.[10] The Debtor relies on Judge Dow's decision in *In re Humphrey*[11] to support her argument that § 1301(c)(2) does not apply because Movants have not filed a proof of claim in this case as yet.

In *Humphrey*, the moving creditor, "Show Me," failed to file a proof of claim. The debtor's plan in that case provided for a dividend to unsecured creditors, but since Show Me failed to file a claim, it was not going to receive any payment. Thus, Show Me argued, it was entitled to § 1301(c)(2) relief because it was not being paid – that is, it was not actually receiving any money.

Judge Dow disagreed. In doing so, he noted that this issue usually arises in cases where the moving creditor has filed a proof of claim and is receiving partial satisfaction of

---

[8] *Id.*

[9] *Id. See also Collier on Bankruptcy*, ¶ 1301.03[2][c], p. 1301-10 (15th rev. ed. 2002).

[10] 11 U.S.C. § 1301(c)(2).

[11] 310 B.R. at 737-40.

the claim through the plan.[12]  Obviously, if the creditor has filed a claim, and is receiving 100% under the plan, § 1301(c)(2) will not apply.  In cases where a creditor is receiving partial satisfaction of the claim, however, Judge Dow pointed out that courts have held that if the plan proposes to make less than full payment on unsecured claims held by creditors with cosigned debt, such creditors may be entitled to relief from the co-debtor stay to collect the amount that will not be paid under the plan.[13]  Thus, the question in those cases is whether, and to what extent, a plan proposes to pay, and not to pay, the claim.  Highlighting the difficulties in making that determination, Judge Dow discussed various approaches available to a court in doing so.[14]  Under the situation in *Humphrey*, the actual holders of filed and allowed general unsecured claims could anticipate receiving a 100% dividend under the plan.  But, had Show Me filed a proof of claim, it and the other unsecured creditors' anticipated dividend would have been reduced to 80%.  Had all scheduled creditors filed claims, the anticipated dividend would have been 23%.

However, because Show Me had not filed a proof of claim, Judge Dow in effect concluded that it would not be necessary to determine whether Show Me should be allowed to pursue the co-debtors for the amount it was "not being paid" – 20%, or 77%, or 100% of its debt – because doing so would give Show Me the benefit of the result it would have obtained if it had filed the claim, when it in fact neglected to do so.[15]  Nor did he need to

---

[12] *Id.* at 739.

[13] *Id.* at 738.

[14] *Id.* at 738-39.

[15] *Id.* at 739.

5

determine whether § 1301(c)(2) applies if a plan proposes to pay some, but not all, of the claim.

I agree with Judge Dow's analysis. However, the situation in *Humphrey* is in stark contrast to the situation in the case at bar. In *Humphrey*, filing the proof of claim was important because the plan proposed to pay *something* to unsecured creditors. Filing a proof of claim, therefore, might have been necessary to the determination of what extent the claim was being paid (and not paid). Here, the Debtor's plan proposes to pay no dividend to unsecured creditors, regardless of what claims are filed and allowed. As Judge Dow expressly pointed out, a zero-percent plan is precisely a situation where it is "clear that the plan proposes not to pay [the claim]."[16] Subsection (c)(2), therefore, applies.

Debtor asserted at the hearing that she could amend the plan to pay something on the Movants' claim, once the claim is filed, but the Court must deal with the situation as it is. The plan was filed on the dat the case itself was filed, long before any bar date for the filing of claims. Such plan, which was confirmed on May 18, 2007, does not provide for any payment to Movants. Therefore, unlike *Humphrey*, no purpose would be served by the filing of a claim. Since the plan does not provide for payment of their claim, Movants are entitled to relief from the co-debtor stay under 11 U.S.C. § 1301(c)(2).

ACCORDINGLY, the Creditors' Motion for Relief from the Stay of Actions Against Codebtors is GRANTED.

---

[16] *Id*. at 737.

IT IS SO ORDERED.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 6/12/07